GEORGE T. MEECH AND ANOTHER *vs.* SIDNEY A. ENSIGN.

In the ordinary case of a purchase of an equity of redemption from a mortgagor, with a provision in the deed that the grantee assumes and agrees to pay the mortgage debt, no right of action on the promise accrues to the mortgagee.

To give the mortgagee a right of action the promise must have been intended for his benefit; it is not enough that a benefit may accrue to him.

CIVIL ACTION upon a promise of a grantee in a conveyance of an equity of redemption to pay the mortgage debt; brought to the Superior Court in Middlesex County. The case was tried to the court and the following facts found:

On the 10th of November, 1873, John H. Poindexter of Hartford made two promissory notes of that date, each for the sum of $1,378.12, and payable to the order of Michael E. Griffin, executor, one two years and the other four years

after date, and to secure their payment mortgaged to Griffin as executor certain real estate situate in Middletown in this state, the same being the first mortgage upon the real estate. On the 12th of December, 1873, Griffin, as executor, endorsed the notes and assigned the mortgage to the plaintiffs.

On the 20th of January, 1875, Poindexter by his deed of that date, conveyed the real estate to the defendant, subject to the mortgage, the deed containing the following paragraph:—

"And furthermore, I, the said grantor, do by these presents bind myself and my heirs forever to warrant and defend the above granted and bargained premises to him the said grantee, his heirs and assigns, against all claims and demands whatsoever, except a mortgage to Michael E. Griffin, executor, as appears on record, amounting to the sum of $2,756.25, and taxes assessed or laid in October, 1874, with the interest thereon which has accrued from May, 1874; all of which the said Ensign assumes and agrees to pay as part of the consideration of this deed."

Soon after this conveyance the plaintiffs, then the owners of the notes, were informed of the same by Poindexter and told by him that the defendant had assumed the payment of the notes; and the defendant, on the 5th of February, 1875, called upon the plaintiffs and paid the interest then due upon the notes, amounting to $96.47, and told them that he was the person who was to pay the notes, and that he should pay the interest promptly as it fell due, and should pay the principal of the notes as they matured.

The defendant in fact paid the interest on the notes from the 5th of February, 1875, up to the 10th of May, 1877. About the 19th of November, 1875, soon after the first note matured, the plaintiffs applied to him to pay it. He said that he had not then the money to pay it with, but would pay it as soon as he could. Being urged afterward from time to time to pay the principal of the overdue note, the defendant, on the 15th of November, 1876, said to the plaintiffs that he could not then pay it but that he would

endorse both the notes and that they could then raise the money upon them. The plaintiffs assented to this proposal, and thereupon the defendant endorsed the notes, writing his name on the back of each of them under that of Griffin.

When each of the notes became payable, Poindexter, the maker, was, and ever since has been, without any property which could have been levied upon for the security of the same, and insolvent. No demand for the payment of either of the notes has ever been made upon him.

The plaintiffs brought a petition to foreclose the mortgage to the Superior Court for the county of Middlesex, at its November term, 1878, upon which a decree was passed at that term limiting the defendant's right to redeem to the first Monday of February, 1879, and he failing to redeem, the complete title to the mortgaged premises then vested in the plaintiffs.

Upon the rendition of the decree the court appointed appraisers of the property, pursuant to the statute, who on the 6th of February, 1879, made their certificate appraising the property at $1,200, which is found to have been its value at the expiration of the time limited by the decree for redemption.

On the 5th of February, 1879, Poindexter executed an instrument in writing, purporting to release the defendant from his undertaking to pay the notes.

Upon these facts the case was reserved for the advice of this court.

*F. H. Parker* and *M. E. Culver*, for the plaintiffs.

1. We contend that the law is so upon principle and authority that the plaintiffs may recover the amount due upon the notes from the defendant. The facts found show clearly — (1.) That the contract made by the defendant with Poindexter was for the benefit of the plaintiffs. The defendant and Poindexter both knew that the plaintiffs were the owners of the notes, and that the interest was in arrears. They both informed the plaintiffs of the contract and the defendant personally promised them that he would

pay the notes, principal and interest.—(2.) That the plaintiffs accepted the benefits given them by the contract of assumption when it was brought to their knowledge. They collected the interest as it fell due from the defendant and demanded payment of the notes, upon their maturity, of the defendant and of him only.—(3.) That the defendant acknowledged his personal and direct liability to the plaintiffs by repeated promises to pay their notes and by repeated payments of interest and by indorsing the notes. —(4.) That no injustice can be done the defendant by holding him liable to the plaintiffs, as he has bound himself to pay the notes to the plaintiffs. The payment of these notes was part of the consideration of his deed. He paid to Poindexter only so much of the consideration as remained after deducting the amount of the notes. Their payment to the plaintiffs would release him from all liability to Poindexter. In fair dealing between man and man he owes the amount of these notes less the $1,200 paid to the plaintiffs.—(5.) That it was the *intent of the parties* to the contract of assumption that the defendant should become personally liable to the plaintiffs for the notes. Everything connected with that contract shows this intent. Poindexter so intended; the defendant so intended; all their acts emphasize this fact. The law will give effect to the intent of contracting parties whenever it is possible. Indeed where a contract is intended for the benefit of a person not a party, it would seem that the law would presume that it was intended that the person benefited should have a right of action even in the absence of evidence of intent.

2. In a multitude of cases analogous to this, and many exactly parallel, the courts of our sister states have established the principle, that in the case of simple contracts the person for whose benefit the contract is made may maintain an action in his own name upon it, though the consideration does not move from him. In *Bohanan* v. *Pope*, 42 Maine, 96, the court says—"Where a party for valuable consideration stipulates with another by simple contract to pay money or do some other act for the benefit of a third

person, the latter for whose benefit the promise is made, if there be no other objection to his recovery than a want of privity between the parties, may maintain an action for the breach of such engagement." This principle is abundantly sustained by the authorities. *Urquhart* v. *Brayton*, 12 R. Isl., 169; *Lawrence* v. *Fox*, 20 N. York, 268; *Burr* v. *Beers*, 24 id., 178; *Hoff's Appeal*, 24 Penn. St. R., 200; *Kountz* v. *Holthouse*, 85 id., 235; *Bassett* v. *Hughes*, 43 Wis., 319; *Davis* v. *Calloway*, 30 Ind., 112; *Twichell* v. *Mears*, 6 Reporter, 40; *Hendrick* v. *Lindsay*, 93 U. States Reps., 143; *Thorp* v. *Keokuk Coal Co.*, 48 N. York, 253; *Joslin* v. *Car Spring Co.*, 36 N. Jer. Law, 141; *Thompson* v. *Thompson*, 4 Ohio St. R., 333; *Lamb* v. *Tucker*, 42 Iowa, 118; *Snell* v. *Ives*, 85 Ill., 279; *Allen* v. *Thomas*, 3 Metc. (Ky.), 198; *Meyer* v. *Lowell*, 44 Misso., 328; *Thompson* v. *Gordon*, 3 Strobh., 196; *St. Joseph's Association* v. *Magnier*, 16 Louis. Ann., 338; *Welsh* v. *St. Paul & Pacific R. R. Co.*, 25 Minn., 314. In Massachusetts and a few other states the decisions are against our claim, but the weight of authority is, we submit, in our favor, as well as the essential equities of the case. In our own state the question is at least an open one and no cases heretofore decided preclude us from recovery. *Crocker* v. *Higgins*, 7 Conn., 342, decides that a bill in equity can be maintained by a person for whose benefit a contract is made, though such person is not a privy to such contract; and HOSMER, C. J., remarks, on p. 347, that " it is now established that a third person may maintain a suit at law on a parol promise made for his benefit, although he is not a party to the contract." In *Steene* v. *Aylesworth*, 18 Conn., 252, WILLIAMS, C. J., states the law in almost the same words as Judge HOSMER, but adds that the suit may be maintained either by the promisee or the person for whose benefit it was made. In *Treat* v. *Stanton*, 14 Conn., 445, the action was brought by the promisee, who was a trustee, and the court held the action properly brought. Judge STORRS put the decision on the facts of that case and expressly disclaims any intention to overrule *Crocker* v. *Higgins*, and *Steene* v. *Aylesworth* is later. In the case of

*Clapp* v. *Lawton*, 31 Conn., 95, a creditor of an insolvent firm brought a suit against another firm who had agreed by parol with the insolvent firm to collect debts due it and apply the avails in payment of debts. The court decided that such a promise was within the statute of frauds, and that, if it were not, the promise offered in evidence was not made for the benefit of the plaintiff and that it did not appear that the plaintiff knew of the arrangement, and that the creditor's remedy was by a bill in equity making all creditors parties. The facts of the case were entirely different from those of the case at bar. Had the plaintiff recovered it would have operated unjustly upon the defendants and other creditors. The present case is in many respects stronger for the plaintiffs than most of the cases cited. The contract of assumption was not within the statute of frauds, as was decided in *Foster* v. *Atwater*, 42 Conn., 244. It was for the benefit of the plaintiffs. They were informed of it. The promisee was legally liable to the plaintiffs. The intent of the parties is clear. But the recent case of *Bassett* v. *Bradley*, 48 Conn., 224, fully sustains the principle we are advocating, and must be regarded as holding that a mortgagee, in a case where the promise is made for his benefit, can maintain an action on the promise.

3. We insist that, aside from the foregoing considerations, there is an equitable ground upon which the plaintiffs are entitled to recover in this action the amount due upon their notes from the defendant by way of equitable relief. —(1.) By virtue of his contract of assumption the defendant became in equity from that time the principal debtor of the plaintiffs and his grantor, Poindexter, a mere surety for him. This is well settled law in our own state. In *Chapman* v. *Beardsley*, 31 Conn., 117, the court, in speaking of the grantees of an equity who had as part consideration of their deed agreed to pay a mortgage due a bank from their grantor, Beardsley, say:—"But they held it under an agreement which made them in equity *principal debtors* to the bank and Beardsley a *surety*," and speak of the debt as "an obligation which it had become their duty to pay." To

the same effect are *Atwood* v. *Vincent,* 17 Conn., 575, 583;
*Blyer* v. *Monholland,* 2 Sandf. Ch. R., 478, 480; *Klapworth*
v. *Dressler,* 13 N. Jer. Eq., 62, 64.—(2.) The plaintiffs as
creditors of the defendant are entitled in equity to the
benefit of all the securities which the surety, Poindexter,
held to secure the payment of these notes to them by the
defendant. The contract by which the defendant bound
himself to Poindexter to pay these notes to the plaintiffs,
and the right of action growing out of that contract, were
a security in the surety's hands to enforce the payment of
the notes, and enure to the benefit of the plaintiffs and
equity will enforce them in their behalf. *Blyer* v. *Monhol-
land,* 2 Sandf. Ch. R., 478, is a precisely parallel case. One
Randolph, having mortgaged property to Blyer, sold the
equity to Monholland, who assumed and agreed to pay the
mortgage. In a bill to foreclose the mortgage and for a
judgment for the deficiency, (the court in that state having
power by statute to render a judgment against the mort-
gagor for the balance due on a mortgage debt after the
avails of the land mortgaged are exhausted,) the court
say:—"It sufficed for Blyer that he held this mortgage
debt against Randolph and that the latter had obtained the
obligation of Monholland to himself to discharge that debt.
This obligation enured in equity to the benefit of the com-
plainant." The case of *Curtis* v. *Tyler,* 9 Paige, 432, is
directly in point, as are also the following:—*Vail* v. *Foster,*
4 N. York, 312; *Halsey* v. *Reed,* 9 Paige, 446; *King* v.
*Whitely,* 10 id., 465; *Klapworth* v. *Dressler,* 13 N. Jer.
Eq. R., 62; *Crowell* v. *Currie,* 27 id., 152; *Crawford* v.
*Edwards,* 33 Mich., 354; *Bowen* v. *Kurtz,* 37 Iowa, 239;
*Bishop* v. *Douglass,* 25 Wis., 696; *Bissell* v. *Bugbee,* 7
Reporter, 550. In the case of *Kenyon* v. *Farris,* 47 Conn.,
510, the court sanctioned the equitable doctrine of subroga-
tion in a case where its application seems at least as difficult
to sustain as in the present case.

4. The release from Poindexter to the defendant is
inoperative as to the plaintiffs. They had assented to the
assumption and the release was without their knowledge or

consent. It has been expressly so decided by the ·courts. *Bassett* v. *Hughes*, 43 Wis., 319; *Davis* v. *Calloway*, 30 Ind., 112; *Garnsey* v. *Rogers*, 47 N. York, 242. To give it effect would operate as a fraud upon the rights of the plaintiffs, which neither common law nor equity will permit. *Fox* v. *Hills*, 1 Conn., 300; *Story* v. *Norwich & Worcester R. R. Co.*, 24 id., 113.

*H. S. Barbour* and *C. Lounsbury*, for the defendant.

The question is, have these plaintiffs, who are strangers to the contract of assumption, and to the consideration of it, a right of action against the defendant, by reason of that assumption, simply as holders of the mortgage notes, and without an assignment of such right of action by the person to whom the promise was made? In all the cases heretofore tried in this state, the suit upon a contract of assumption expressed in a deed has been either by the grantor or his assignee. We therefore have to examine this case in the light furnished by decisions of other courts than our own, and upon principle. It does not appear that the defendant knew, at the time he took the conveyance from Poindexter, that the. notes had been transferred by the payee, or who were the holders of them. If that assumption gave the plaintiffs a right of action, it was a right acquired by persons unknown to the contracting parties, of whose benefit they had no thought. Such a claim involves ·the absurdity that the promisor contracts ·for the benefit· of a person *not named* in the contract, *not known* to him at the time, and *of whose existence he was not aware*, and subjects himself, not to *one action* by the promisee, but to as many different actions as there may happen to be holders of the mortgage notes. We claim that, under the general rule of law, no action can be maintained by a person not a party to the contract, nor privy to the consideration of it; and that, while the rule admits of some exceptions, the present case is within the rule, and not within any of the exceptions to it, as an examination of both the English and American authorities will show.

1. Beginning with the English cases, we refer to *Dutton* v. *Pool,* 1 Ventris, 318, 332. The plaintiff declared in assumpsit, that his wife's father, being seized of certain lands now descended to the defendant, and being about to cut £1,000 worth of timber from the lands, to raise a portion for his daughter, the defendant promised, in consideration that he would forbear to fell the timber, to pay the daughter £1,000. The court held the action lay, saying: "It might have been another case if the money had been to have been paid to a stranger; but there is such a nearness of relation between the father and child, and it is a kind of debt to the child to be provided for, that the plaintiff is plainly concerned." Here, as in some other cases, an exception is made because of the near relationship of the person to be benefited to the promisee. About fifty years later *Crow* v. *Rogers* was decided, 1 Stra., 592. Here the court, on a promise of the defendant to pay money to a third person, gave judgment for the defendant, holding the plaintiff a stranger to the consideration. *Price* v. *Easton,* 4 Barn. & Ad., 433, (1833,) follows *Crow* v. *Rogers,* holding that a stranger to the consideration cannot sue. *Peddie* v. *Brown,* (1857,) 21 Jurist, 895, holds that a third person cannot sue unless the promise was evidently made for his benefit. *Tweddle* v. *Atkinson,* 1 Best & Smith, 393, (1861,) decidedly overrules *Dutton* v. *Pool,* (all the parties being near relations). WIGHTMAN, J., said: "It is now established that no stranger to the consideration can take advantage of a contract, although made for his benefit;" and CROMPTON, J., added more to the same effect, saying: "The consideration must move from the party entitled to sue on the contract." So it appears that the English courts, after having given countenance in some older cases to the idea that in some exceptional cases a stranger to the consideration may sue, have, for many years past, decided that no stranger to a contract can sue upon it, even though the contract if carried out would enure to his benefit.

2. The decisions of the courts of several of our states are in accord with the latest decisions of the English courts;

among which, we name Massachusetts, (cases hereafter cited,) New Hampshire, (*Warren* v. *Batchelder*, 15 N. H., 129,) Vermont, (*Tuttle* v. *Catlin*, 1 D. Chip., 366,) Maryland, (*Owing's Exr.* v. *Owings*, 1 H. & G., 484,) and Pennsylvania, (*Blymire* v. *Boistle*, 6 Watts, 182, *Kountz* v. *Holthouse*, 85 Penn. St., 234,) to which may be added the case of *National Bank* v. *Grand Lodge*, 98 U. S. Reps., 123. The cases in Massachusetts to which we particularly refer are *Mellen* v. *Whipple*, 1 Gray, 317, and *Exchange Bank* v. *Rice*, 107 Mass., 37. Some earlier cases in Massachusetts, which held differently, are either overruled or explained, so as not to be authority for the plaintiffs. The facts in the case of *Mellen* v. *Whipple* are almost exactly like those in this case. METCALF, J., giving the opinion of the court, says:—" The general rule is, and always has been, that a plaintiff in an action on a simple contract must be the person from whom the consideration actually moved, and that a stranger to the consideration cannot sue on the contract. The rule is sometimes thus expressed—there must be a privity of contract between the plaintiff and defendant, in order to render the defendant liable to an action by the plaintiff on the contract." He goes on to state three exceptions to this rule, within neither of which does the present case fall. He then says: " The defendant has no money which in equity and good conscience belongs to the plaintiff, no funds have been put into the defendant's hands for the purpose of meeting the plaintiff's claim. The sale of the equity of redemption to the defendant did not lessen the plaintiff's security for the mortgage debt, for that equity could not have been taken towards payment of the debt. * * The stipulation in the deed of the equity, that the defendant should pay the mortgage notes, was a matter exclusively between the two parties to that deed, and is nothing more than the law would require of the defendant, in order that he might derive any benefit from his purchase of the equity." In *Exchange Bank* v. *Rice* the court say:—" The general rule of law is, that a person who is not a party to a simple contract, and from whom no

consideration moves, cannot sue on the contract, and the recent decisions in this commonwealth and in England have tended to uphold the rule, and to narrow the exceptions to it."

3.  A number of decisions in the state of New York have been in favor of the holders of claims secured by mortgage against persons who accepted deeds of similar phraseology to that now in question.  But it will be found that those cases recognize the necessity of the existence of an intent, on the part of the contracting parties, in the transaction between them, of benefiting the holder of the claim.  It is clearly laid down that it is not enough that a benefit accrues to the mortgagee, but that he must be the party intended to be benefited.  *Garnsey* v. *Rogers*, 47 N. York, 240; *Merrill* v. *Green*, 55 id., 270; *Simson* v. *Brown*, 68 id., 361; *Vrooman* v. *Turner*, 69 id., 283.  This distinction is clearly and emphatically stated by our own court in the recent case of *Bassett* v. *Bradley*, 48 Conn., 224, as it had been in the former cases of *Treat* v. *Stanton*, 14 Conn., 445, and *Clapp* v. *Lawton*, 31 Conn., 95.  This principle is also incidentally approved in the cases of *Thrall* v. *Spencer*, 16 Conn., 139, and *Jones* v. *Quinnipiack Bank*, 29 Conn., 42.

4.  If we are correct in our view of the law thus far, we have no occasion to inquire into the effect of the release given by Poindexter to the defendant, and upon that point we will only say that it would be strange if two parties contracting with each other merely regarding their mutual interest can ·become so bound to a third that they can not by their mutual agreement discharge the obligation of the contract which they themselves have made.  And this is the view taken of the law in a recent case in the Supreme Court of New York.  *Stephens* v. *Casbacker*, 8 Hun., 116; see also *Hartley* v. *Harrison*, 24 N. York, 173.  We submit that until there is a novation as to the debt the promisee may discharge the contract.

5.  We contend further that in this case the plaintiffs are no stronger in equity than at law.  That a court of equity may, in a proper case, where the equities require it, and to

Meech v. Ensign.

prevent injustice, hold one party subrogated in place of another, we do not deny. But this is not such a case. The equities are all the other way. The plaintiffs have the full title to the mortgaged property. They have been paid a part of their claim by way of interest on the notes, which is gain to them and loss to the defendant. They purchased the notes in about a month after they were made, and long before he purchased the equity in the land. They did not, therefore, purchase relying upon his responsibility. If they took the notes of an insolvent maker without inquiring into his responsibility, that was laches on their part. If they lose a balance due on the notes, he loses the price paid for the equity, and the interest paid to them. If they over-estimated the value of the property, so did he. If their loss results from the depreciation of the property through circumstances beyond their control, so does his. If they are innocent of every wrong intent in this whole transaction, he is equally so. And as the loss in this case must fall upon one or the other, equity will not interfere to remove the burden even from an innocent party, to throw it upon another equally innocent. If, as in the case of *Crocker* v. *Higgins*, 7 Conn., 342, the defendant held property in his hands which in equity belonged to the plaintiffs, or if he had received money for their use, which was the considera-tion of the promise, the case would be widely different, and they might recover in a proper action.

CARPENTER, J. The plaintiffs held a mortgage on real estate. The defendant purchased the equity of redemption, agreeing with the mortgagor to pay the mortgage debt. Subsequently the mortgage was foreclosed—the property then being worth less than the mortgage debt—leaving a balance unpaid. This action is brought to recover the balance. The promise was not assigned to the plaintiffs but was discharged by the mortgagor before suit brought. The question of the defendant's liability is reserved for the advice of this court.

The case differs from the other cases on this subject that

have heretofore been before this court. We now have the naked question whether the owner of a debt secured by mortgage may maintain an action on the promise made by the purchaser of the equity of redemption to the mortgagor to pay the debt without an assignment of the right of action which that promise gives.

As a rule actions on contracts can be brought only by him with whom the contract was made and from whom the consideration moved. The legal title is deemed to be in him alone and strangers to the contract cannot sue. The rule is a salutary one and should not be departed from except for good reasons. There are however some exceptions to it. Actions of assumpsit may be maintained in some instances where there is no express contract with the plaintiff and where the consideration does not move from him. If $A$ receives money from $B$ to be paid to $C$, $C$ may maintain an action against $A$. These cases however are exceptions only in appearance. They in fact recognize the general rule and are really within it; for the action is not brought on the express promise by $A$ to $B$, but on an implied promise by $A$ to pay the money to $C$.

Another class of exceptions is where the contract has for its object a benefit to a third party and is made with that intent. Some early English cases in which promises were made to a father or uncle for the benefit of a child or nephew are instances of this class. There may also be cases in which a third party may have some peculiar equity in the subject matter of a contract which will enable him to maintain a bill in equity to enforce it.

Does this case fall within any exception recognized by authority and supported by principle?

Before alluding to decided cases let us examine the case with some care in the light of the circumstances, for the purpose of discovering just what the intention of the parties was and precisely what the defendant promised to do; for courts always in enforcing contracts intend to give effect to the intention of the parties; and when that intention is discovered in respect to a legal and valid contract it

is the inflexible and imperative law of the case. And it is a necessary part of the rule itself that the courts will not so construe and enforce a contract as to bring about a result not expressed in the contract and not intended by the parties.

What was the transaction? It was not a sale of a piece of land for a fixed price, equal to the value of the land, so as to create a debt for that sum; but was simply a sale of the equity of redemption. The distinction between the land, unincumbered, and the equity of redemption, is obvious enough, and is an important one, as on it depend in a great degree the rights and obligations of the parties. The defendant purchased the equity of redemption. The finding is that the mortgagor " conveyed to the defendant said real estate subject to said mortgage." So that the only debt brought into existence by the transaction was the price agreed to be paid for the equity of redemption. The mere purchase raised no debt to the mortgagor which the defendant was to discharge by paying the incumbrance. By the contract of assumption he obliged himself to the mortgagor to pay the mortgage debt. Whether that raised any personal obligation to the mortgagee is the question in the case. If the probable intention of the parties is to govern it is difficult to find any such liability in the transaction. The mortgagee was not a party to it, no part of the consideration moved from him, and he was in no worse condition because of it. He still had the security of the land and the personal responsibility of the mortgagor, and that is all he contracted for or required. The parties contracted with reference to their own interests, not his; to benefit themselves, not him. He had no legal or equitable interest in the contract and there is no room for the presumption that it was intended for his benefit.

There was no agency express or implied. The mortgagor would doubtless be surprised at the suggestion, should it be made, that he was acting as the agent of the mortgagee. There was no substitution or novation, for that requires three parties, and here were only two; besides the original debtor was not discharged.

It was not the object of the parties to give the mortgagee additional security; and to interpret it in that sense is to give it a force and meaning never contemplated by the parties, and is, in effect, making a contract for them. The only contract which they made was simply this—the defendant agreed that he would pay the mortgagor's debt. The promisee alone had the legal and equitable interest. It follows that he alone can enforce it unless he imparts that right to others. That he may sue will not be disputed. If the mortgagee has that right by force of the contract, then two persons wholly independent of each other have an equal right. If either may sue both may, and a suit by one will not abate or bar a suit by the other; and a discharge by one for any cause short of a fulfillment will not discharge the contract. Thus the promisor may be harassed with two suits at the same time on the same contract, and if he would compromise with the promisee he must obtain the consent of a stranger. If this is the law it is an anomaly, for another instance of the kind is hardly to be found in the whole range of jurisprudence.

We are aware that there are decisions from courts of the highest authority, and whose opinions are entitled to the highest respect, which hold that the creditor may sue on such contracts; perhaps it is not too much to say that the prevailing current of authority in this country is in that direction; but believing as we do that they are not founded in good reason or sound policy we cannot accept them as law. The question is an open one in this state, and principle, rather than precedents not founded in principle, should determine it.

We cannot undertake to examine in detail the cases alluded to; we can only refer in a general way to the reasoning by which they are supported. It is interesting to note the various grounds on which they stand, some of which are not only weak in themselves, but fail to strengthen the others. It is an argument of no little weight against the correctness of decisions that they seem to require disconnected and inharmonious reasons to sustain them.

Some of the cases seem to proceed "upon the broad principle that if one person makes a promise to another, for the benefit of a third person, that third person may maintain an action on the promise;" and that without regard to the question whether the benefit to a third person was the principal thing intended or was a mere incident. *Lawrence* v. *Fox*, 20 N. York, 268; *Burr* v. *Beers*, 24 N. York, 178; *Thorp* v. *Keokuk Coal Co.*, 48 N. York, 253; *Davis* v. *Calloway*, 30 Ind., 112.

In cases of this class the reasoning is not uniform. In some it is suggested that from the express promise to the promisee the law implies a promise to the third person. In others the principle of agency is invoked and the mortgagor in making the contract is treated as the agent of the mortgagee. The difficulty with this last position is that it is contrary to the facts.

In *Urquhart* v. *Brayton*, 12 R. Isl., 169, DURFEE, C. J., holds the defendant liable to a third person on the ground of a novation, while POTTER, J., in the same case places the liability on the ground of money had and received. There seem to be several difficulties in treating it as a novation; first, it changes the nature of the contract; second, it requires a third party, and here are but two; and third, an essential element of a novation is wanting—the discharge of the original debtor.

In other cases the transaction is treated as a sale of the land irrespective of the mortgage and a retention by the purchaser of a portion of the purchase money, to be paid to the mortgagee. *Hoff's Appeal*, 24 Penn. St., 200; *Urquhart* v. *Brayton*, 12 R. Isl., *supra; Blyer* v. *Monholland*, 2 Sandf. Ch. R., 478. When the circumstances will warrant that view of the facts there is no difficulty. In such cases the debtor actually places or leaves the money in the hands of the promisor to be paid to the creditor, and the action for money had and received may be maintained—not on a promise to the debtor but on an implied promise to the creditor.

Other cases, and this class includes a large number, resort

to the doctrine of suretyship. *Blyer* v. *Monholland*, 2 Sandf. Ch. R., *supra; Curtis* v. *Tyler*, 9 Paige, 432; *King* v. *Whitely*, 10 Paige, 465; *Bissell* v. *Bugbee*, 7 Reporter, 550; *Crowell* v. *Currie*, 27 N. Jer. Eq., 152. We agree that that ground would be tenable, in equity at least, if that was the real contract between the parties; that is, if the parties really intended by the transaction to furnish additional security to the creditor. If not, it seems to us difficult to support the decisions upon that ground. In order to do so the court must assume without reason and contrary to the fact that such was the object and purpose of the contract. We have already endeavored to show that it was not. Let us examine the subject a little further. There is no express contract of suretyship. Whatever element of suretyship there is results by operation of law from the position in which the parties place themselves. The defendant agreed with the debtor that he would pay the debt. As between themselves he thereby became the principal debtor. The original debtor not being discharged he was also liable to the creditor. If compelled to pay he was a surety only in this, that he had a right to call on the defendant to indemnify him. But all this did not affect the creditor and he is not a party to it. What interest has he in the transaction? And in what consists his equity? To make that relationship available to him it is necessary not only to bring him into contract relations with the other parties, but also to reverse the positions of the principal and surety and make the purchaser the surety instead of the principal. Upon what principle can that be done? By what process of reasoning can it be vindicated? Again, there is no implication of suretyship as between the creditor and the other parties, as no such implication is necessary in order to give full effect to the intention of the parties.

We come now to a class of cases which constitute an important exception to the rule we are considering—that suits must be brought by the party making the contract and from whom the consideration moved. We refer to those cases in which the parties confessedly contracted for the

benefit of third persons, not incidentally but as the principal object. Some of the cases cited by the plaintiffs are cases of this description and are not applicable to the case at bar. There may be cases however in which this principle is invoked to sustain actions by the mortgagee against the purchaser of the equity of redemption.

The principle itself is best illustrated by a brief reference to a few of the leading cases. In *Dutton* v. *Pool*, 1 Ventris, 318, the defendant promised the father to pay the daughter a sum of money as a marriage portion. It was, held that the daughter might sue on the promise. The relation of the father to the daughter and his obligation to give her a marriage portion seem to be adopted as a substitute for privity of contract. Some of the decisions in the state of New York have taken a similar view and treat the obligation of the mortgagor to the mortgagee as a " substitute for privity," or " privity by substitution," to connect the mortgagee with the contract. *Vroom* v. *Turner*, 69 N. York, 280, and cases cited. *Dutton* v. *Pool* in modern times in this country would be upheld on the ground that the promise was intended for the benefit of the daughter *as its object.*

In *Felton* v. *Dickinson*, 10 Mass., 287, the defendant promised the father of a minor son to pay the son a sum of money for his services. After performing the service it was held that the son might maintain an action in his own name. In *Farley* v. *Cleveland*, 4 Cow., 432, (same case in error, 9 Cow., 639,) the defendant bought hay of the debtor, in consideration of which he promised to pay the debt due the plaintiff. The plaintiff maintained a suit in his own name. In *Hendrick* v. *Lindsey*, 93 U. States R., 143, the defendant promised *A* that if he would sign a bail bond he would give him a bond of indemnity. *A* and *B* signed the bail bond and it was held that they could jointly maintain an action on the promise. In these cases there is no difficulty in discovering an intention to benefit the third person.

And yet this exception seems not now to be recognized in England. *Tweddle* v. *Atkinson*, 1 Best & Smith, 393.

Even in Massachusetts the tendency is to narrow the exception and adhere more rigidly to the rule. *Exchange Bank* v. *Rice*, 107 Mass., 39. It seems to us that the exception to the rule is a reasonable one and should prevail.

The question then recurs—is the case at bar within the exception? We have already expressed our views as to the nature of the contract and the real intent of the parties. If we are right it is clear that the question must be answered in the negative.

That the incidental advantage to the creditor, (if it is an advantage to have his debt paid by one man rather than another,) is not such a benefit as the exception contemplates, is apparent from a consideration of the possible and even probable consequences of holding it to be so. The case before us affords a good illustration. The debtor is insolvent, and the property mortgaged has largely depreciated, so that it fails to pay the debt. Now if the plaintiffs may recover the balance of the defendant, they have a security for their debt which they did not originally have, which they never contracted for, and which the contracting parties did not intend that they should have. It in effect makes him the absolute guarantor of the debt.

Whatever doubt may have existed as to the state of the law in New York on this subject, it seems to be set at rest, for the present at least, by recent decisions. In *Garnsey* v. *Rogers*, 47 N. York, 233, which was an action like this, the court says, by RAPALLO, J.,—"I do not understand that the case of *Lawrence* v. *Fox* [20 N. York, 268,] has gone so far as to hold that every promise made by one person to another, from the performance of which a third would derive a benefit, gives a right of action to such third party, he being neither privy to the contract nor to the consideration. To entitle him to an action the contract must have been made for his benefit. He must be the person intended to be benefited. * * If such a contract could be enforced by the creditor who would be incidentally benefited by its performance, every agreement by which one party should agree with another, for a consideration moving from him, to

become security for him to his creditors, or to advance money to pay his debts, could be enforced by the parties whose claims are thus to be secured or paid. I do not understand any case to have gone this length."

The case of *Merrill* v. *Green*, 55 N. York, 270, was this:— Roberts and Green were partners. They dissolved, and Green and one Nichols executed a bond to Roberts conditioned that Green should pay all the partnership debts. In a suit on the bond by a creditor it was held that creditors could not sue. GROVER, J., says:—" Green was liable with Roberts for the payment of the firm debts. He agreed with Roberts upon a valid consideration to assume the payment of the whole of the debts, and Nichols undertook that he should perform this contract. This was no agreement made by Green and Nichols with the creditors or for their benefit, but one with Roberts to exonerate him from his liability for the debts of the firm, payment of which Green was to make, and, in case of his default, such payment to be made by Nichols. All the liability incurred by either was upon the bond, and this was to the obligees only."

The case of *Vrooman* v. *Turner*, 69 N. York, 283, was also the case of a mortgage. ALLEN, J., says:—" To give a third party who may derive a benefit from the performance of the promise an action, there must be, first, an intent of the promisor to secure some benefit to the third party, and second, some privity between the two, the promisee and the party to be benefited." In *Simson* v. *Brown*, 68 N. York, 361, the court says:—" But it is not every promise made by one to another from the performance of which a benefit may accrue to a third person, which gives a right of action to such third person, he being neither privy to the contract nor to the consideration. The contract must have been made for his benefit as its object, and he must be the party intended to be benefited."

We advise the Superior Court to render judgment for the defendant.

In this opinion the other judges concurred.