WILLIAM BOARDMAN *vs.* WILLIAM W. LARRABEE.

Where a purchaser of land subject to a mortgage is by the terms of the deed to assume and pay the mortgage debt, he becomes in his relation to the mortgage debtor the principal debtor, and the original debtor in his relation to him a surety, but this relation exists only between themselves and does not affect the mortgage creditor.

And it does not affect the case that the parties notify the mortgage creditor of the transaction.

Boardman *v.* Larrabee.

Where therefore, after the mortgage note has become due, time is given the purchaser for payment, it does not discharge the original debtor on the ground that he has become a surety.

To discharge a surety by giving time to the principal, the time must be given by a positive contract that can be enforced.

The plaintiff who held by assignment a mortgage note made by the defendant, afterwards purchased of a grantee of the defendant the equity of redemption, and subsequently released it to the defendant. Held that there was no merger, that the transaction was an independent one and did not affect the plaintiff's rights as holder of the mortgage and that he was not bound to account for rents received from the property while he owned the equity.

ACTION on a promissory note held by the plaintiff as endorsee; brought to the City Court of the city of Hartford and tried to the court before *Bennett, J.* Facts found and judgment rendered for the plaintiff, and appeal by the defendant. The case is fully stated in the opinion.

*R. D. Hubbard* and *C. J. Cole*, for the appellant.

*G. Collier* and *S. W. Adams*, for the appellee.

PARDEE, J. On April 24th, 1875, William Larrabee made his note, payable two years from date to John R Hills, for $1,250, and secured it by a second mortgage; in May following he sold the land to George O. Hall, who assumed and agreed to pay the note to Hills; in July following G. O. Hall sold the land to Ezra Hall, who assumed and agreed to pay the note to Hills. Hills desiring payment, Ezra Hall asked William Boardman, the plaintiff, to lend him money wherewith to pay it; subsequently, on March 2d, 1877, at Ezra Hall's request Boardman gave his check to Hills for the amount of the note and took an assignment of it and of the mortgage. He furnished the money at the instance and request of Ezra Hall and for his accommodation, and upon an understanding with him to wait six months or a year for payment. Hills endorsed the note without recourse. Ezra Hall endorsed it as follows:—"Hartford, March 2d, 1877. For valuable consideration, I hereby guarantee the payment of the within note." He paid interest to Boardman from that date to

April 24th, 1879, at which time he offered to pay the principal if he insisted upon it, but expressed a preference for further time; Boardman granted it; Hall died insolvent shortly thereafter. In 1879 Boardman purchased the equity of redemption for $60 for the reason that the first mortgagee threatened foreclosure; in the same year he quit-claimed it to Larrabee without consideration, retaining $225 received for rent. This suit is for the amount of the note; the plaintiff had judgment.

The defendant appeals for reasons as follows:—That after Ezra Hall purchased the mortgaged property and assumed payment of the mortgage and note, he became the principal debtor, and Larrabee occupied the position of a surety, and that the plaintiff having knowledge of that relation when he loaned the money to Hall, and of the purpose for which it was to be used, could not hold the defendant to the payment of the note, but must look to Hall for payment and to the property for security. That the plaintiff having agreed to loan Hall the money for six months, the transfer of the note and mortgage to the plaintiff was only collateral security, and the extension of time would discharge Larrabee. That at the time of the last payment of interest, Hall having offered to pay the plaintiff, and the plaintiff having agreed to accommodate him further, and Hall having become insolvent, the defendant is discharged. That the plaintiff was negligent in not collecting the amount due from Hall, and in not notifying the defendant that he held the note and should claim payment, until after the death of Hall, insolvent, and that he cannot now collect the note of the defendant, and that by reason of such neglect on the part of the plaintiff the defendant is discharged. That the purchase of the equity of redemption by the plaintiff of the mortgaged property, and appropriating it to his own use, operated as payment to the extent of the value of the property, and discharged the defendant. That the sale and conveyance of the mortgaged property to Edward S. White, rendered the plaintiff liable to account for the full value of such security, to be applied in payment of the

note, and that the defendant was to that extent released and discharged from liability on the note. That the rents collected by the plaintiff of N. Kingsbury should have been applied in part payment of the note, and to that extent the defendant was discharged.

By the contract between Larrabee and George O. Hall the latter became principal and the former surety; this however solely between themselves; security to Hills was not within the intent of either of them. Larrabee purchased the protection upon his own motion, and paid for it from his own money solely for his own benefit; it was his absolute property; he could preserve or relinquish it at pleasure without responsibility to Hills. The latter therefore acquired no right of action under it. *Meech et al.* v. *Ensign*, 49 Conn., 191. By the contract between George O. Hall and Ezra Hall the latter became principal and the former surety; and, for the reasons above stated, this solely between themselves. The effect of the act exhausted itself upon them; neither reaching forward to Hills nor backward to Larrabee. Therefore these acquired no right of action under it. The declaration of Ezra Hall to Hills that he had bought the land of George O. Hall and had agreed with the latter to pay the note, did not affect the position of the parties. It gave Hills no right of action against Ezra Hall; nor did it transform Larrabee's obligation as principal into one as surety so far forth as Hills was concerned. Nor did the same declaration to Boardman, accompanying the request that the latter should purchase the note and hold it until payment, give him any right of action against Ezra Hall or create a suretyship in Larrabee which could in any degree affect the rights of Boardman against him. Therefore Boardman purchased the note free from any obligation to regard Larrabee in any other light than as the maker of it, to be sued at the pleasure of the holder.

By guaranteeing the ability of Larrabee to pay, Ezra Hall did not promote him from the onerous position of a principal to the more favorable one of surety; for thereto-

fore Hall had been a stranger to the note; he was under neither legal nor equitable obligation to Larrabee in reference to it; the guaranty was neither paid for nor procured by the latter; nor was it given for his benefit. It was procured by Boardman solely for his own security; it was his exclusive property, to be retained, modified or released at his pleasure without accountability.

Larrabee was principal upon a note overdue. If he neither paid it, nor enforced his contract with G. O. Hall, but remained inactive, accepting and availing himself of the omission of the holder to force him, he became in the legal sense the petitioner for delay; he assumed the possibility that time might render G. O. Hall's contract valueless. Boardman could neither waive nor enforce it. Therefore Larrabee cannot compel him to insure it.

Moreover, if we should concede to Larrabee the rights of a surety, he would be met by the well-settled rule that the surety is only released when there is a positive contract by the holder to give time to the principal—a contract upon good consideration susceptible of enforcement. The record discloses none. The finding is that Boardman "furnished the money at the instance and request of Ezra Hall and for his accommodation, and upon an understanding with him to wait six months or a year for payment." Hall has neither obtained nor paid for a positive agreement not to sue; he wished for time and Boardman gave him reason to hope for it. His safety however was in the presumption that Boardman would remain satisfied with the interest upon his investment and that Larrabee would not volunteer payment.

In *Bank of Utica* v. *Ives*, 17 Wendell, 501, NELSON, C. J., says that "mere indulgence at the will of the creditor, extended to the debtor, in no way impairs the obligation of the surety; if it did it would be a most inconvenient and oppressive rule, as then suits must immediately follow the maturity of the paper. It is well settled that there must be a valid common law agreement to give time, founded of course upon a good consideration, to have this effect. * *

The utmost that he testifies to is, that he solicited indulgence to arrange his affairs and try to relieve his endorsers, and that he was given to understand that this would be extended to him." In *Norris* v. *Crummey*, 2 Randolph, 328, it is ruled that indulgence granted by a creditor to the principal debtor will not discharge the sureties of such debtor unless the creditor shall have bound himself in law or equity not to pursue his remedy against the principal for a definite length of time. In *McKenny's Executors* v. *Waller*, 1 Leigh, 434, it was determined that a mere indulgence to a principal creditor, not binding him to suspend his proceedings for any time, though such indulgence be given at the very time the sheriff is about to levy execution upon the property of the principal, and although in consequence of that indulgence the principal debtor has been enabled to remove his property out of the reach of future process, was not even in equity a discharge of the surety. In *Walwyn* v. *St. Quintin*, 1 Bos. & Pul., 652, the holders of a bill, to an application from the acceptor stating that it was probable he should be able to pay at a future period, answered that they would not press him. This was held to be no discharge.

In May, 1879, the plaintiff purchased the equity of redemption and subsequently released it to the defendant. While holding it the tenant paid him rent to the amount of $220. It is the defendant's claim that this should be applied upon the note. But the purchase of the equity was an investment which the plaintiff could make quite independently of his ownership of the note secured by the mortgage. He held his different interests in severance; at last conveying one and retaining the other. · The law will not force a merger upon him contrary both to his intent and interest. He holds the profit upon the purchase without accountability.

There is no error in the judgment complained of.

In this opinion the other judges concurred.

[NOTE. The foregoing case was heard at the January Term, 1883, in the district of Hartford, but the opinion was not prepared in season for its publication with the cases of that term.]