Speak, J.
Two questions arise upon the record, One relates to the sufficiency of the answer; the other to the legal effect of the evidence of defendants introduced at the trial.
1. The answer sets up that after the giving of the note and mortgage declared upon, to-wit, July 7,1887, the defendants, Mary E. and W. H. Manning, sold the real estate described in the mortgage to one Babbitt, who bought for himself and others, who as part of the consideration for the conveyance, assumed and agreed to pay to plaintiff the mortgage note sued on; that the agreement was in writing and incorporated in the deed to Babbitt; that the plaintiff was duly advised of said sale and arrangement and the agreement of the purchaser to pay the note and consented *147 thereto, and received the interest (pursuant to the terms of said agreement) on said note from Babbitt and assigns from April 30, 1887, to April 30, 1894; that subsequent to July 7, 1887, the land was. sold by Babbitt to one George A. Slaght, and by him after-wards sold to his sister, Emma K. Slaght; that the note became due April 30,1890, and that the payment of the same was extended by plaintiff at maturity, and every six months thereafter, to April 30,1894, by an agreement with plaintiff and said purchasers without the knowledge or consent of these defendants, for a valuable consideration, to-wit: upon the agreement that they should pay seven per cent., interest semiannually for and during each six months; that the purchasers paid said interest as above set forth and agreed upon; that payments of interest were made in advance of various sums without the knowledge or consent of these defendants which interest was so paid in full from April 30, 1890, up to April 30, 1894 ; that after the sale of the real estate as above described these defendants occupied the position of sureties on said note, and by reason of the extending of time of payment and so receiving the interest thereon, without their knowledge and consent, these defendants are released.
As a second defense the answer states that one George R. Young, as executor of' Emma K. Slaght (the last purchaser of said land) commenced an action in the probate court praying an order to sell the real estate covered by the mortgage; that plaintiff herein was made defendant and filed an answer; that the real estate was sold and the proceeds were insufficient to pay the mortgage claim of plaintiff. These defendants were not parties to said suit and had no knowledge thereof; that the real, estate sold for much *148 less than it was reasonably worth; that if it had brought its fair cash value the plaintiff’s claim would have been paid in full, and if plaintiff is permitted to maintain its action herein defendants will be damaged in the amount of plaintiff’s claim.
For a third defense the defendants refer to the first and second defenses of their answer and make the same a part of this defense, and allege that the real estate became greatly reduced in value from April 30, 1890, to April 12, 1895, the date of the sale; that if plaintiff had not extended payment of the note when it became due the same would have been paid in full; that the real estate would have sold for at least twelve thousand dollars; that defendants supposed the note was paid at maturity; that said extension of time was made by plaintiff with Babbitt and others without the knowledge and consent of these defendants; that the owner at that date was amply able to pay the same and by reason of extending the payment and receiving the interest and because of the proceedings to sell in the probate court these defendants are released from, all obligation and liability on said note.
The demurrer to this answer raised the question of its sufficiency in law to constitute a defense. The first proposition is that the sale and conveyance of the mortgaged land by the Mannings to Babbitt, his assumption as a part of the purchase price to pay the note of the Mannings to the University, and the knowledge by the University of that arrangement and its consent thereto, and accepting the payment of interest from the purchasers, changed the relation of the Mannings to the note from that of principal makers to that of sureties only; In other words, if a principal maker of a note and mortgage given to secure its payment, can effect the sale of the mort *149 gaged lands, and obtain an agreement by the purchaser to pay the mortgage debt, and the mortgagee being apprised of the transaction, consents to it, and allows the purchaser to make payments on the note, he thereby releases the original maker as principal and may treat him thenceforth as a surety only. The proposition is not that the mortgagee agreed to release the original debtor, or to accept the purchaser as such original debtor; no such averment appears; it is plainly and baldly that the effect in law of the consent of the mortgagee that the purchaser may pay, and allowing him to do so, ipso facto works a change in the relation of the principal maker to the note. Expressions here and there in text-books seem to countenance this conclusion, and there are decisions of courts to like effect. But is it sound? That, as between the mortgagor and the purchaser, the general relation of surety and principal may be created by reason of their contract, can be conceded, but this falls very far short of changing the relation of a mortgagor from a principal to a surety as respects the mortgagee. The mortgagor has received, the full consideration and has executed his solemn promise in writing to pay the obligation unconditionally. The sale of the mortgaged property is made between the parties to it solely for their advantage, and in no sense for the benefit of the mortgagee. He need not know, and ordinarily does not know, anything about the transaction until after it is completed. If he happens to know that the negotiation is in progress, it is not within his power to arrest it, nor has he any voice in shaping it. He is as absolutely helpless to prevent it as is a total stránger. Incidentally it may work to Ms advantage. That is, being an agreement with the original payor to pay the debt, the creditor *150 may, if he so elect, take advantage of it. Emmitt v. Brophy, 42 Ohio St., 82. But the agreement is not made for his benefit; as before stated, it is wholly for the benefit of the parties to it. Nor could they compel the mortgagee to recognize the sale or look to the purchaser for the payment of the debt. We are aware that the authorities are not in accord on the proposition. Among the cases favoring the contention of defendants in error is Murray v. Marshall, 94 N. Y., 611, and there are others. On the> other hand, Teeters v. Lamborn, 43 Ohio St., 144; Boardman v. Larrabec, 51 Conn., 39, and James v. Day, 37 Iowa, 164, hold to the opposite view. Other decisions of like import are found in the reports, and the weight of authority seems to support the contention of plaintiff in this respect.
This being the situation, why should the mortgagor be accorded the right to compel the mortgagee to elect between a repudiation of the obligation thus assumed by the purchaser and a novation by which he releases the original debtor from his obligation as principal, and consents that from thenceforth he shall be regarded as surety only? Why should the creditor be compelled to trade debtors or release any security he already holds? Whether the obligation is paid by the maker or by one to whom he has transferred the property forming the security is a matter of indifference to the payee; for that purpose one hand is as good as another. We are of opinion that the proposition is not sound; that the facts stated do not show that the Mannings became sureties as between them and the University. Hence, the further proposition that the Mannings are released because of the alleged agreement to extend the time for payment of the principal, by reason of a promise to pay seven per cent. *151 interest, without their consent, is without support in law, It is urged that the allegation of an agreement to extend the time of payment of itself implies in law a previous agreement to accept the purchasers as principal debtors. We are of opinion that it does not. The mortgagee, being under no obligation to accept the purchasers as principal debtors, or as debtors of any kind, had a legal right to exonerate them from direct obligation to it altogether and a fortiori could assent to relieve' them for a time. It is further urged that the Mannings were damaged by this agreement. How? The simple delay was not a. matter of which they could find fault. (Dye v. Dye, 21 Ohio St., 86; Moore, Adm’r, v. Gray, 26 Ohio St., 525.) And we have already found that they could not compel the creditor to sue the purchasers; nor could they complain of an agreement between purchaser and mortgagee unless they were thereby deprived of some existing right, though, as between them and the purchasers, they were sureties. Using the language of the court in Jenkins v. Clarkson, 7 Ohio (pt. 1), 76; “If the surety has been deprived of no right; if he has been left perfectly free to manage his concerns with his principal in his own way; if his hands have not been tied, why should he complain?” They would not be deprived of their right at any time to pay off the debt and proceed against the purchaser on his assumption of its payment. ' Not being parties to the agreement for an extension, they were not bound by it, and all the remedies that they possessed before the extension remained to them after.
The second defense is based upon the assumption that it was the duty of the mortgagee to see that the makers were made parties to the proceeding in the probate court to sell the mortgaged land, instituted by *152 the executor of Slaght, and that as the land sold for less than its real value they have been daxnáged and the mortgagee should make them whole. But the suit was not brought by the University, and the Mannings having parted with their title to the land, were hot in the chain of title, and hence not necessary parties. There can be no legal foundation for this claim.
The third defense attempts to embody the allegations of the first and second defenses, by reference only. This was ineffectual to constitute the averments of the other defenses integral parts of the third. Eureka Ins. Co. v. Baldwin, 62 Ohio St., 368, 384. The defense, as pleaded, fails not only to show that there was any relation of surety existing in favor of the Mannings, but fails also to show that the alleged extension was based upon any consideration. It seems hardly worth while to dwell longer on this feature. The pleading as a whole made no defense to the plaintiff’s cause of action, and hence the demurrer should have been sustained.
The case of Teeters v. Lamborn, supra, is cited by each party in support of his contention. In that case the answer set up a sale by the mortgagor and an agreement of an assumption by the mortgagee of the mortgage debt, and knowledge by the creditor of such sale and agreement and his assent thereto, and that he then adopted the purchaser as his sole debtor* for the debt, and that afterwards the creditor entered into an agreement with the purchaser to extend the time of payment and received interest in advance for the period of ninety days without the knowledge or consent of the mortgagors. The court held that the proof showed that the creditor had knowledge of the contract of sale and knew of the assumption of the debt by the purchaser and consented to receive pay *153 nient if tendered by him, but did not consent to look to such purchaser as his sole or even principal debtor; that the obligation of the makers of the note as to him remained as it was when the note was executed, and that the fact that the creditor could enforce the promise of the purchaser by action did not change the relation of the parties. This holding (with which we fully agree) effectually disposed of the claim of defendants that the agreement for an extension ipso facto released the makers from their obligation to pay, and, that question settled, nothing else remained for the court to adjudicate. However, the opinion, and syllabus as well, proceed then to state that had the answer alleged and the proof shown that the mortgagors incurred loss or damage by reason of the extension, they would have been discharged pro tanto. As the question was not made by the record this is obiter and is not binding as a decision. With great respect for the court and for the eminent judge who reported the case, we are compelled to say that, for the reasons above stated, we do not agree with the proposition.
2. In the practical administration of justice in the courts it frequently happens that evidence given at the trial may cure defects in pleadings, and so it is fair to look to the testimonx in this case to see whether the defects in the answer are supplied. With respect to the matter of any agreement on the part of the University to accept the purchasers as principal debtors, and look to the mortgagees as sureties only, the claim rests upon a conversation between Mr. Manning, testified to by him, and Mr. Crawford, the agent of the plaintiff. In substance that is: “In the fall of 1888 I called at his office and told him I had gone into business in Indiana and wanted to notify *154 him that when the paper matured on that farm on which our notes were signed, I wanted him to make the collection — be free from any further responsibility. He smiled and asked me if I was scared. I told him no; that I knew it was good now, and then he followed it up by stating that the paper wms entirely satisfactory to him; that it had been strengthened. He never objected to improvement of paper — never objected to paper being improved and strengthened.” Manning further testified that from that time until the suit was commenced he never heard anything more about the note or real estate; no demand for payment was made on him or Mrs. Manning for payment of interest. One Hartenstein also testified that he was present and heard the conversation testified to by Manning and it was to the effect: “You know, Mr. Crawford, I have disposed of the Greene county farm and I wish to be released of all further financial responsibility in the matter. He further stated he had sold it to thoroughly reliable men, naming them, and these men had agreed to pay off the mortgage when it became due and that they should be looked to for the money. Manning also said something about going into business in Indiana.” It would hardly be a good use of space to take it for the purpose of showing that this talk falls short of an agreement on the part of the University to assent to a change of the relation of the Mannings to the debt. It does not even tend to show such agreement for it demonstrates clearly the exact opposite. Crawford was invited to make a promise which he significantly omitted to do. It is true that he notified the purchasers from time to time that interest was due on the note and that they paid interest in accordance with such notices, but this cannot alter the real situation. It fails to *155 support the claim of an agreement to change the attitude of the makers of the note. As before stated, payment by one was as welcome as by another.
Under the view taken of preceding questions it is possible to decide the Case without considering the effect of the evidence respecting the claim of the extension of time. Yet the question is made upon the record and may properly receive attention. The claim rests wholly on the effect of the indorsement of interest of date April 15, 1891, which is: “paid six months’ interest, to April 30, 1891, $210.00.” It is urged that this implies necessarily that there was an agreement to extend the payment for a definite period, to-wit: fifteen days. But does it? Such indorsements have been the subject of controversy in many eases. It is observed in some opinions that it is prima facie evidence of an extension. We know of no case where it is held to be conclusive. While as a matter of law the length of time is not important, yet it strikes one as improbable that there should be negotiation between parties situated as these persons were, for an extension of only fifteen days, and we look, therefore, to their acts and conversation to discover what was in fact said and done. The payment was made by George A. Slaght (a witness for the defendants at the trial) to Mr. Crawford. The witness does not say a word about a request for an extension nor an agreement to extend. - He does not recall the exact words, but says that he went into the bank where Mr. Crawford was and made him understand that he wished to páy interest on that note; that he paid it, took a receipt for it and went his way. Mr. Crawford, when called shortly after by the plaintiff, testified that George Slaght made that payment of interest, that Slaght said he had traded for the prop *156 erty, and beyond that nothing was said. He further testified positively that he was never asked to extend the time, nor receive interest in advance. There is no denial of this statement, although the defendants’ witnesses were presumably present, or at least within reach of process. Any possible inference favorable to defendants from that indorsement was thus effectually rebutted,' and it left the conclusion that the payment of interest was made at the time as a matter of convenience to Slaght,( and Avithout any understanding at all that an extension of time for the payment of the principal had been had or even requested. There Avas no occasion for such request; no threát of suit had been made and there is not a word in the record to show that coercion of any kind was being used with Slaght. His payment was wholly voluntary. Peterman v. Dorman et al., 7 W. L. B., 281, superior court of Cincinnati, opinion by Harmon, J., while not authority binding on this court, is an instructive case upon the subject, where the authorities are ably _ reviewed, and the conclusion here stated fully sustained. See, also, opinion of the district court, reviewing the same case, opinion by Smith, J., reported in 8 W. L. B., 306; also Harnsberger, Ádm’r, v. Kinney, 13 Grat., 511. Possibly, under our practice, such a question should go to the jury, but certainly their conclusion adverse .to the plainitff ought not to be sustained by the court.
Exceptions were taken to the charge of the court and to refusals to charge. It is not important that these be considered:
We are of opinion that the trial court erred in over ruling the demurrer to the second amended answer, in overruling the motion of the plaintiff to take the case from the jury, and its motion for a new trial, and *157 that, upon the pleadings and admitted facts, plaintiff is entitled to judgment. - Judgments below will, therefore, be reversed and the cause remanded to the court of common pleas with direction to render judgment for plaintiff for the amount claimed in the petition, and for costs.
Burket, Davis and íShauck, JJ., concur. Williams, J., concurs in the,reversal on the first proposition of the syllabus. Minshall, O. J-, absent.