# .WALKER

*v.*

# THE WASHINGTON TITLE INSURANCE COMPANY.

CONTRACTS; PRINCIPAL AND SURETY; JOINT OBLIGORS, ACTIONS AGAINST;
    BILLS AND NOTES; INDORSERS, LIABILITY OF.

1. *Quære*, whether Sec. 827, R. S. D. C., providing that an action against
   one or some of joint obligors may, while the litigation therein
   continues, be pleaded in bar of another action against another or
   others of such parties, is to be limited strictly to simultaneous
   actions at law and held not to apply to suits in equity; and also
   whether the plea in bar authorized thereby is, by virtue of its
   character and purpose, to be interpreted to mean a plea in abate-
   ment of the action.

2. In an action on a promissory note against the two indorsers thereof,
   a plea of the pendency of an equity suit in which a cross-bill had
   been filed by the holder of the note for the substitution of trustees
   in the deed of trust given to secure the same, is not a good plea
   in bar, under Sec. 827, R. S. D. C., and it is immaterial that the
   cross-bill contained a prayer for general relief, as such a prayer
   could not have the effect to convert the cross-bill into a suit for
   judicial foreclosure and recovery of the debt.

3. *Quære*, whether an agreement made by the holder of a promissory
   note secured by deed of trust, before maturity, with a prospective
   purchaser of the property embraced in the deed of trust, who was
   to assume payment thereof, to extend the note if he would pur-
   chase, will include the maker of the note or inure to his benefit
   and discharge the indorsers, if not consented to by them.

4. Where, however, the agreement by the holder of a note with such
   prospective purchaser to extend the time of payment, is expressly
   conditioned upon the prompt payment of the semi-annual instal-
   ments of interest when due, and the purchase is made but the
   first instalment of interest is not paid when it falls due, and the
   holder of the note thereupon, and before its maturity, attaches
   thereto a memorandum declaring that as the interest was not paid,
   the provisional extension is void, the indorsers are not discharged,
   if upon the failure of the maker of the note to pay it on maturity,
   they are given proper notice of its dishonor.

5. The acceptance by the holder of the note, under such circumstances, from the purchaser of the property, after maturity of the note, of partial payment with interest, will not have the effect of reviving the original agreement as to extension, where it does not appear that he demanded or expected a revival of the forfeited agreement.

6. Where there is a principal debtor, and others occupy the legal relation of sureties for his performance, a binding contract for the extension of the time of payment for a definite period, made between the creditor and the principal debtor, without the consent of the sureties, will discharge them from liability; and there is nothing peculiar in the application of this principle to the case of parties to bills and notes.

No. 1160.   Submitted February 19, 1902.   Decided April 1, 1902.

HEARING on an appeal by the defendants from a judgment of the Supreme Court of the District of Columbia entered upon a verdict directed by the court, in an action upon two promissory notes.                    *Affirmed.*

The COURT in its opinion stated the case as follows:

This is an appeal from a judgment against appellants as indorsers of two notes of the aggregate amount (remaining due) of $3,607.85.

The legal title to certain lots in the city of Washington had been vested in the appellants, Samuel H. Walker and Thomas W. Smith, as trustees for a "syndicate," of which they were members.

On June 1, 1892, they sold two of the lots to George N. Walker, receiving from him two notes for $3,500 each, payable to the order of appellants, as trustees, three years after date, namely, June 1, 1895, with interest until paid, at the rate of 6 per cent. per annum, payable semi-annually. Said notes were secured by a deed of trust, in the ordinary form, with power of sale, made by George N. Walker to John N. Walker and Clifford U. Smith, trustees.

The payees of said notes, Samuel H. Walker and Thomas W. Smith, were stockholders in the Washington Title Insurance Co., the appellee, and the former was its treasurer

at the time.   At said Samuel H. Walker's request, the appellee purchased the said notes for cash, whereupon he and said Thomas W. Smith indorsed and delivered the same, signing as trustees and then as individuals.   Each note bears indorsements of the payment of interest from August 1, 1892, to July 14, 1894.   About April 1, 1894, S. Herbert Giesy purchased the said lots from George N. Walker, and as a part of the consideration paid for their conveyance assumed the payment of the two notes secured by the deed of trust.   He declined to buy unless the time for payment could be extended for two years.   The appellee, through its president, who died before suit was brought, expressed its willingness to give the extension required, in the following terms indorsed on each note: " This note is extended to June 1, 1897, if semi-annual interest is paid promptly when due."

The interest due December 1, 1894, and June 1, 1895, was not paid, and some time between said dates, the following words were written on a slip, by order of appellee, that was attached to each note: " As the semi-annual interest has not been paid, the provisional extension indorsed on these notes is void."   The notes were duly presented at maturity and protested for nonpayment.   One of the appellants, Samuel H. Walker, was the notary and copied the memorandum aforesaid in his notarial record.

This suit was not brought until May 25, 1899.   During this interval certain payments were made on account of accrued interest and indorsed on the notes.   Note 1 shows payment of interest due to June 1, 1895, and on March 13, 1896, interest to December 1, 1895, $105.   Note 2 shows indorsement of interest to June 1, 1895; April 16, 1896, $15 on account of interest, and October 19, 1896, $25 on account of interest.   No new contract for extension of time was entered into; but on June 21, 1895, a representative of the title company called upon Samuel H. Walker and asked him to agree to an extension.   Walker agreed subject to the consent of the other indorser, Thomas W. Smith, and wrote and signed the following words upon a card which

37

he delivered to the aforesaid representative: " Upon pay-
ment of interest and costs on Giesy notes for $3,500 each,
the contract for extension will be agreeable to me if it is
to Mr. Smith.   June 21, 1895."

This memorandum was not signed by Smith.   There was
testimony tending to show the presentation of the card to
Smith, and his assent to the extension, but his declination
to sign because " his word was as good as his bond."   Smith
denied the presentation of the card and his assent to any
extension.

Giesy testified that he knew nothing of any new extension.

George N. Walker, the maker of the notes, testified that
he had had no negotiation with the title company concerning
any extension.

The court, upon this evidence, instructed the jury to re-
turn a verdict for the plaintiff, because the evidence showed
" no absolute agreement to extend, and no extension which
ever became effective."

Defendants excepted to this instruction, and their bill
of exceptions sets out substantially the foregoing facts,
and an independent additional fact hereafter stated and
considered.

Motion for new trial having been overruled, and judg-
ment entered on the verdict, the defendants have appealed.

*Mr. O. B. Hallam* and *Mr. S. T. Thomas* for the appel-
lants.

*Mr. Ashley M. Gould* and *Mr. J. J. Darlington* for the ap-
pellee.

Mr. Justice SHEPARD delivered the opinion of the Court:

The first assignment of error is that: " The court erred
in sustaining the demurrer to the plea in abatement."

It was stated on the argument, and so appears in the
briefs, that defendants first pleaded in abatement the pend-
ency of a suit in equity against the maker of the notes and

the trustees and indorsers, to foreclose the lien of the deed of trust; and that a demurrer to said plea had been sustained. The transcript, however, does not show that any such plea was filed, demurred to, or passed upon by the court.

The record does show that, on December 12, 1898, defendants filed four pleas in bar, the first of which is *non assumpsit,* the second *nil debet,* the third the pendency of the equity suit before mentioned, and the fourth, the agreement with Giesy for an extension of the notes without the consent of the defendants. On January 28, 1899, three additional pleas were filed under leave of the court. The first of these denies notice of nonpayment of the notes; the second avers that the indorsements were made formally and for accommodation of the plaintiff under agreement with the maker of the notes; and the third repeats substantially the extension of time under agreement with Giesy.

The record shows a replication by plaintiff joining issue on all of the aforesaid pleas.

The bill of exceptions recites that the defendants introduced in evidence the record in the equity cause referred to. This, in connection with the averments of the third plea, shows that, on December 23, 1897, the appellant, Samuel H. Walker, filed the bill making the title company, his co-indorser, Thomas W. Smith, and the trustees in the deed of trust, defendants therein. It does not appear what was the purpose of this bill, but on the argument it was said to be to procure contribution, in some form or other not given, but presumably against other members of the " syndicate." It appears, however, that the title company filed a cross-bill in the same proceeding against Samuel H. Walker, Thomas W. Smith, George N. Walker, and the trustees, John N. Walker and Clifford U. Smith, alleging among other things the execution of the notes and the balance due thereon, the refusal of the trustees to make the sale under the trust when requested, the insufficiency of the property to pay the debt, and praying for the appointment of receivers for the custody of the same, the removal of

the trustees, the appointment of new trustees with instructions to execute the trust, and for such other and further relief as to the court might seem proper and just, etc.

A receiver was appointed January 10, 1898. On September 11, 1898, a decree was passed appointing substitute trustees, and instructing them to execute the powers of the trust deed, and in the event of any surplus remaining after the discharge of the indebtedness to report the same to the court. This was the last order made in the cause except one confirming the receiver's report October 7, 1901. It has been further argued under this assignment, that the plea of the depending suit in equity is good in bar and that the court erred in not so instructing the jury. The record does not show that this point was called to the attention of the court at the time of the peremptory instruction to the jury, and it was not made the ground of any special recital in the general bill of exceptions.

The plea of depending suit, whether in abatement or in bar, is founded on section 827, R. S. D. C., which reads as follows:

" When money is payable by two or more persons jointly or severally, as by joint obligors, covenantors, makers, drawers or indorsers, one action may be sustained and judgment recovered against all or any of the parties by whom the money is payable, at the option of the plaintiff. But an action against one or some of the parties by whom the money is payable may, while the litigation therein continues, be pleaded in bar of another action against another or others of said parties."

The objection on behalf of the appellee that neither of the questions argued is properly before us for determination, is perhaps well taken. Rule V, section 5; *Stanton* v. *Embry*, 93 U. S. 548, 553, and cases cited. But as in our view of the effect of the depending suit — assuming it to have been properly pleaded, proved, and made a part of the record — no right of the appellee will be impaired, we will pass the objection.

The main object of the statute aforesaid was to give a right of action and judgment against all parties to a con-

tract to pay money, whether joint or several obligors, makers, indorsers, etc. It was also intended " to avoid a multiplicity of actions to be carried on simultaneously for the recovery of the same debt." *Harris* v. *Leonhardt*, 2 App. D. C. 318, 321.

Whether this section shall be limited strictly to simultaneous actions at law and held not to apply to suits in equity, or whether the plea in bar authorized thereby shall, by virtue of its character and purpose, be interpreted to mean a plea in abatement of the action, are likewise questions that are not now necessary to be determined.

Assuming then, without so deciding, that the section applies to depending suits of the kind in equity, as well as to actions at law, that it could be availed of by plea strictly in bar, and that, proof having been submitted in its support, it was incumbent upon the court to entertain it, we are of the opinion that the particular suit was not within its comprehension.

It is hardly necessary to say that the appellee, as holder of the notes secured by the trust deed, had the option to foreclose through demand for sale under the powers conferred therein, or by means of a bill in equity; and that in case of foreclosure suit it could obtain a decree for the recovery of the money due, with execution thereof as at law. R. S. D. C., Sec. 808. But it does not appear that the appellee instituted any such suit. It was brought into the equity court as one of the defendants to the suit begun by the appellant Walker.

In filing its cross-bill therein, it sought neither judicial foreclosure, nor recovery of the debt.

Not having been able to obtain performance by the trustees named in the deed of their duty to sell the mortgaged property, it sought the substitution of others empowered and directed to perform in their stead. This relief was essential in order to obtain the exercise of the preferred right to the remedy of the contract. This is all that was asked for and all that was obtained, besides the receivership of the rents — an auxiliary remedy made necessary by additional special considerations.

That the cross-bill, with this and no other purpose expressed, concluded with the usual additional and formal prayer for "such other and further relief as to the court might seem right and proper," is immaterial.

Without considering how far additional relief to that specifically sought in a bill might be decreed under such a prayer at the instance of the complainant, it is sufficient here to say that it could not have the effect to convert a bill for the appointment of trustees to execute a power of sale into a suit for judicial foreclosure and recovery of the debt.

The contention under the remaining assignment of error is that the indorsers were discharged by reason of the extension of the time of the payment of the notes without their consent.

The motion to direct a verdict for the plaintiff necessarily eliminated the issue of the consent to the proposed extension of time claimed to have been given on June 21, 1895, for there was a direct conflict of testimony relating to the concurrence of the indorser, Smith, in the consent to the then proposed extension, given by Walker upon condition of that concurrence.

On the other hand, it is not contended that the mere forbearance of action after maturity and protest afford any ground for the discharge of the indorsers.

The sole question, then, is the effect of the agreement for the extension made with, and for the benefit of Giesy more than a year before the maturity of the notes, and evidenced by the indorsement thereon in the following words: "This note is extended to June 1, 1897, if semi-annual interest is paid promptly when due."

That a valid agreement between the holder of a note or bill and the maker thereof to extend the time of payment for a definite period, without the consent of surety or indorser, will discharge the latter, is an unquestioned principle. But the appellee denies its application to the case at bar upon two distinct grounds, either of which, it is contended, is sufficient foundation for the peremptory instruction to the jury.

The first of these is, that the promise to Giesy — conceding, for the sake of the argument, its binding effect as between him and the appellee — did not include the maker of the note or inure to his benefit, and was not therefore an extension of time of payment of which the appellants, as indorsers, could complain.

The proposition is, in other words, that the doctrine does not extend to the case of a contract for extension made with a stranger. Treating Giesy, who was not a party to the notes, as such stranger, the proposition seems reasonable, and is the established doctrine in England. *Lyon* v. *Holt,* 5 M. & W. 250; *Frazer* v. *Jordan,* 8 El. & Bl. 303. The last case cited was an action against the defendant as drawer and indorser of a bill of exchange. The defense was that after the indorsement of the bill to the plaintiff and after it had become due, he, without the consent and against the will of the defendant, agreed with K. & Co.— strangers to the transaction, that if K. & Co. would bind themselves to see the said bill paid to the plaintiff, he would give time to the acceptor of the bill and would forbear to sue the acceptor for ten days; and that K. & Co. did so bind themselves, and plaintiff then forbore as promised, etc. In delivering the opinion of the court, Lord Coleridge said: " The principal debtor, having given no consideration for the promise, has no ground to complain of the breach of it, and cannot say that faith had been broken with him. There is no privity of contract with him; and we see nothing on which any right, either at law or in equity, for him to insist on such a contract, can be founded. * * * No such doctrine as that there can be a discharge in such a case arising from a contract with a stranger has ever yet been established. In all the text books which were cited the rule is laid down as to a binding contract with the acceptor or principal debtor."

The appellants reply that Giesy was not such a stranger because of his express assumption of the debt in the purchase of the mortgaged property.

By that contract, unquestionably, Giesy became, as between himself and the maker of the notes, the principal

debtor.   Being in the nature of a second security additional
to the mortgage, the mortgagee would have the right, in
equity, to enforce it for his own benefit.   *Keller* v. *Ash-
ford,* 133 U. S. 610, 623; *Giesy* v. *Gregory,* 15 App. D. C.
49, 55, 56.

It may be conceded that, had the holder of the notes
become an actual party to this contract, expressly accept-
ing the substitution of Giesy as principal debtor, at the
same time binding himself to the extension of the time of
payment to two years after maturity without the consent
of the indorsers, their discharge would necessarily have
followed.

· There is no pretense, however, that there was such an
actual contract.   The most that can be said is that the ap-
pellee had notice of the purchase of the property and the
assumption of the debt by Giesy — a transaction to which
it had no right to object under any circumstances.   It was
willing to accept payment from Giesy, and further, to grant
him an extension upon condition of his prompt payment of
the semi-annual interest as it should become due.   As it
did not consent to look to Giesy as either its sole or prin-
cipal debtor, the obligation of the maker of the notes re-
mained the same as before the transaction.   " The fact
that the creditor could enforce the promise of the purchaser
by action in his own name does not change the legal rela-
tions between the parties."   *Teeters* v. *Lamborn,* 43 Ohio
St. 144, 145, 146.

In that case it was held, that as the purchaser did not
become the principal debtor of the mortgagee, his exten-
sion of the time of payment to the purchaser, without the
consent of the mortgagor, did not have the effect to dis-
charge the latter.

The Supreme Court of Connecticut took the same view
of the effect of an extension where successive purchasers
and indorsers were involved.   *Boardman* v. *Larrabee,* 51
Conn. 39.

The question remains, however, whether Giesy, under the
special circumstances of the case, is such a stranger to

the contract between the other parties as was the intervening contractor for the extension in the several cases above cited.

For the reason that he came into the transaction with the consent of the secured holder of the notes, materially induced thereto by the conditional promise of extension, we are not entirely agreed in respect of his true relation to the parties, or the legal effect thereof. As we do fully agree on another point that is decisive of the case, we will leave the question unanswered.

The appellee's second ground is that the promised extension to Giesy was upon a condition never performed, that was declared void for nonperformance before the maturity of the notes, and therefore did not affect the rights or interests of the indorsers.

The question whether the benefit that would result from keeping money at interest for a definite period is a sufficient consideration for a promise to extend the time of payment of the principal is not an open one in this court. *Reed* v. *Tierney*, 12 App. D. C. 165, 172. In that case it was held that such an agreement made after maturity prolonged the life of the instrument so as to prevent the bar of the statute of limitations. There was no question of release of the indorser in that case because he had consented thereto; but the principle involved was the same. The agreement for extension in consideration of the payment of the same interest for a definite period was indorsed on the note, after its maturity, and signed by maker, indorser and holder.

In the case at bar the promise of extension was made more than a year before maturity and two instalments of interest were payable in the interval. It was indorsed on the note as a promise to extend until June 1, 1897, upon the condition that the semi-annual interest should be paid promptly when due. The evidence does not show that Giesy, in turn, entered into a new contract with the appellee to pay said interest. So far as the evidence goes, the payment of the interest was optional with him. He could pay or not as each instalment became due, and by so doing perform the condition upon which the extension depended.

If, on the other hand, he had paid the interest promptly until maturity and then tendered payment of the principal, the appellee could not have denied his right to do so. It had no contract with him by which it could have compelled him to retain the money at interest for two more years. Under these conditions, the holder's promise to extend would hardly be considered as founded upon a sufficient consideration to make it binding. *Leavitt* v. *Savage,* 16 Me. 72, 76.

Looking at the agreement from another point of view, Giesy was under a binding obligation to the maker of the notes to pay the interest as well as the principal as they should respectively mature.

This obligation, as we have seen, was one that the holder could, upon equitable principles, enforce for his own benefit if made important by the exhaustion of the security. Consequently, even an additional express promise to pay the interest accruing *before* maturity, which he was already under obligation to do, would not amount to an additional valuable consideration sufficient to bind the holder and thereby discharge the indorsers. It may be, however, that as Giesy would not have purchased the incumbered property and assumed the debt, without the agreement for the conditional extension, this fact would operate as a sufficient consideration by way of estoppel against the appellee upon whose representation he took action; and we are inclined to the opinion that it would.

This brings us to the final point of the contention, namely, the legal effect of the agreement for the extension indorsed on the notes.

Conceding the sufficiency of the consideration if performed, the agreement was not absolute but conditional. The condition was the prompt payment of the interest, two instalments of which would become due before the maturity of the principal sums. Giesy made no attempt to perform the condition, whereupon the holder of the notes exercised its unquestioned right to declare the agreement at an end. Before the maturity of the notes it so declared and at-

tested its declaration by attaching to each note a slip containing the following words: " As the semi-annual interest has not been paid the provisional extension indorsed on these notes is void." Acting upon this, it presented the notes for payment at maturity and obtained formal protest. Maker and indorsers had express notice of the failure of the agreement. Giesy recognized the lapse of the agreement and made no objection. Therefore, nobody's hands were tied; nobody connected with the transaction sustained a legal injury.

We are clearly of the opinion that the conditional agreement for extension, having been recalled and canceled for nonperformance of the condition before the maturity of the notes, did not work the discharge of the indorsers. *Harnsberger* v. *Geiger*, 3 Gratt. 144, 147; *Verner* v. *Turley*, 1 M. & W. 316, 320.

The contention of the appellants, that the acceptance of partial payments of interest from Giesy, after the maturity of the notes, had the effect to revive the original agreement, is, we think, without merit. Giesy was but performing, and in part only, the obligation that he had assumed in his purchase of the property, actuated, presumably, by the hope of finally realizing something therefrom. There is no pretense in the evidence, that he demanded or expected a revival of the forfeited agreement; and his payment of all the interest even would not have that effect by implication merely.

Receipt of the partial payments of overdue interest when tendered, and the subsequent delay of suit upon the notes, without a contract for forbearance, afford no ground for the discharge of the indorsers. 24 Am. & Eng. Encyc. of Law, p. 826, note 1.

We deem it unnecessary to determine the questions raised in respect of the loss of negotiability of the notes after indorsement by reason of the transactions concerning their payment.

The principle invoked by the appellants is that governing the relations of principal and surety, which, we apprehend,

do not depend upon the form of the contract. The principle is, that in all cases where there is a principal debtor, and others occupy the legal relation of sureties for his performance, a binding contract for the extension of the time of payment for a definite time, made between the creditor and the principal debtor, without the consent of the sureties, will discharge their liability.

There is nothing peculiar in the application of the principle to the case of parties to bills and notes, as far as we have been advised, or have been able to discover.

Finding no error in the proceedings on the trial, the judgment will be affirmed with costs. It is so ordered. *Affirmed.*

.[Mr. Justice HAGNER, of the Supreme Court of the District of Columbia, sat with the court in the hearing and determination of this case, in the place of Mr. Chief Justice ALVEY — REPORTER.]